# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE VASSALOTTI a/k/a | : | |
| MARIE MCBRIDE, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
|     v. | : | NO. 08-5574 |
| | : | |
| WELLS FARGO BANK, N.A. d/b/a | : | |
| AMERICA'S SERVICING COMPANY | | |
|     Defendant | | |

August __9_, 2010                                                               Anita B. Brody, J.

**<u>MEMORANDUM</u>**

Plaintiff Marie Vassalotti ("Vassalotti") brings this action against Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo" or "ASC"), alleging that Wells Fargo failed to service her mortgage loan in accordance with the terms of the original note and mortgage, two loan modification agreements, federal law, and state law.

In the Third Amended Complaint, Plaintiff brings four claims: violation of the Real Estate Settlement Procedures Act ("RESPA") (Count I), breach of contract (Count II), violation of the Fair Credit Reporting Act ("FCRA") (Count IV), and violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count V).[1] Defendant moves to dismiss Counts I, IV, and V.

---

[1] On October 21, 2009, I granted Defendant's Motion to Dismiss Count III of the Second Amended Complaint, which alleged a violation of Pennsylvania's Loan Interest and Protection Law.

I. BACKGROUND[2]

In August 2007, Wells Fargo, as servicer of Vassalotti's mortgage loan, filed a foreclosure action against Vassalotti because she failed to make the required payments under her mortgage agreement. On November 14, 2007, Wells Fargo sent Vassalotti a letter describing its loan modification program. Loan modification programs generally assist delinquent borrowers by extending their overdue payment obligations over the remaining term of the loan. Wells Fargo described its own program as follows:

> This program adds the delinquent interest, taxes, and/or insurance payments to your unpaid balance if applicable. If you qualify, we may be able to extend the repayment of the past due amounts over the remaining term of your loan.

(3AC Ex. F.) Typically, the borrower's deficit is added to the original loan's remaining balance, to create an increased overall balance. The borrower then agrees to make payments toward the modified balance and has no further obligations with respect to the original shortfall.

On January 18, 2008, after Vassalotti executed a loan modification agreement, Wells Fargo withdrew the foreclosure action. On May 22, 2008, Vassalotti executed a second loan modification agreement with Wells Fargo.

In addition to other delinquencies under the original mortgage agreement, Vassalotti failed to make sufficient payments into her escrow account. An escrow account is an "account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan."

---

[2] Unless otherwise noted, all facts are taken from the Second Amended Complaint ("2AC") and Third Amended Complaint ("3AC") and are considered in the light most favorable to Vassalotti, the non-moving party.

24 C.F.R. 3500.17. This action arises, in part, out of a dispute over whether the May 22, 2008 loan modification agreement cured the deficit in Vassalotti's escrow account.

In the May 22, 2008 loan modification, Wells Fargo capitalized a $33,238.25 deficit into a modified loan balance. Thus, Vassalotti's loan balance increased from $277,688.51 to $310,926.76. The full modification data is as follows:

|  | Pre-Modification | Modified |
|---|---|---|
| Unpaid Principal Balance | $277,688.51 | $310,926.76 |
| Note Rate | 9.65000% | 9.650% |
| Monthly P&I Payment | 2,385.10 | 2,691.86 |
| DDLPI (I) Eff. Interest Change Date (II) | 01-08 | 06/01/2008 |
| Maturity Date | 12-35 | 12/01/2035 |
| First Modified Payment Due Date |  | 07/01/2008 |
| New Term (months) |  | 330 |
| Breakdown of Amounts Due: |  |  |
|     Interest (Plus Del Prin if Structured Finance mod) |  | $35,428.44 |
|     Escrow |  | .00 |
|     Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal |  | 7,800.72 |
|     Borrower's Payment Toward Arrearages |  | $9,990.91 |
|     Mortgage Insurer Contribution |  | .00 |
| Total Capitalized Amount |  | $33,238.25 |

(2AC Ex. N.) The Breakdown of Amounts Due explains how Wells Fargo arrived at the $33,238.25 figure: it added Vassalotti's interest deficit ($35,428.44) and "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal" fees ($7,800.72), and then subtracted Vassalotti's payment towards her arrearage ($9,990.91). Vassalotti argues that the entry of ".00" with respect to the escrow balance demonstrates that the loan modification brought her escrow account deficit to zero. In contrast, Wells Fargo contends that the Breakdown of Amounts Due lists only the amounts that were capitalized into the modified balance. It argues that the ".00" entry for the

escrow line item reflects that Vassalotti's escrow obligations were not capitalized into the modified balance.

In July 2008, Wells Fargo informed Vassalotti that her escrow account maintained a deficit of $10,220.35. (2AC Ex. O.) To cover this shortfall, Wells Fargo increased Vassalotti's required monthly escrow payments from $327.45, the amount stated in the May 22, 2008 agreement, to $1,214. (2AC Ex. P.) On August 10, 2008, Wells Fargo wrote Vassalotti informing her that she was delinquent on the required payments under the mortgage agreement. (2AC Ex. S.)

On August 19, 2008 and September 23, 2008, Vassalotti wrote Wells Fargo disputing her mortgage loan's accounting. (2AC Exs. T & U.) These letters expressed Vassalotti's belief that Wells Fargo erred by carrying over a negative escrow balance from her original mortgage agreement and increasing her required escrow payments from $327.45 per month to $1,214 per month. Wells Fargo responded to these letters on September 5, 2008 and November 12, 2008, explaining that the loan modification agreements failed to cure Vassalotti's escrow deficit. (2AC Ex. W; Def.'s Mot. to Dismiss, Ex. 1.) In Count I, Vassalotti claims that Wells Fargo's responses were insufficient under RESPA.

In Count IV, Vassalotti complains that Wells Fargo violated the FCRA by furnishing inaccurate information to credit reporting agencies. In particular, Vassalotti alleges that Experian, Equifax, and Trans Union (together, the "Credit Reporting Agencies" or "CRAs") reported that Vassalotti's mortgage was discharged in bankruptcy. Vassalotti further alleges that the CRAs contacted Wells Fargo, and that Wells Fargo verified the inaccurate information.

Vassalotti contends that the information is inaccurate because her mortgage was never discharged in bankruptcy.

Finally, in Count V, Vassalotti alleges that Wells Fargo violated the UTPCPL by engaging in "deceptive acts that caused confusion and misunderstanding of the terms of the loan modifications." (3AC ¶ 10.) Although this pro se plaintiff fails to explain her exact legal theory, the essence of her allegations is that Wells Fargo misled her by stating that it would capitalize her escrow shortage into the modified loan balance and that Vassalotti relied on that misrepresentation when she signed the loan modification agreement.

Federal question jurisdiction over Counts I and IV is proper pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts II and V is proper under 28 U.S.C. § 1367(a).

## II. MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). A motion to dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff is not entitled to relief under any reasonable reading of the complaint. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). The plaintiff must make factual allegations sufficient to "raise a right to relief above the speculative level," which requires more than "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A court deciding a Rule 12(b)(6) motion generally may consider a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997) (internal quotations and emphasis omitted). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

#### A. Count I – RESPA

RESPA imposes a duty on loan servicers to respond to borrower inquiries. At issue here is Wells Fargo's responsibility to respond to qualified written requests under 12 U.S.C. § 2605(e)(2)(B).[3] This section requires a loan servicer to:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> [or]
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–
>
> > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> >
> > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

---

[3] A qualified written request is a written correspondence that includes a statement of the reasons for the borrower's belief that the account is in error or provides sufficient detail regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

Id. Vassalotti wrote qualified written requests on August 19, 2008 and September 23, 2008. Wells Fargo responded to those requests on September 5, 2008 and November 12, 2008, respectively. The sole issue with respect to this claim is whether Wells Fargo's responses were sufficient.

> In the August 19, 2008 letter, Vassalotti wrote:
>
> Please be advised there are serious errors in your accounting of my escrow account. All prior shortages were addressed in my loan modification dated 5/08. ASC and I agreed on a monthly payment of $2,691.86 plus $327.45 for escrow. The modification is executed by both ASC and myself. There was no mention of any escrow shortages in any of my documents. Now, you are sending me notices of a huge deficit and put my payment up by over $1,000 plus adding late fees and misappropriating the payments I have sent.

On September 5, 2008, Wells Fargo responded, in part:

> Our records indicate that a Loan Modification (Modification) was completed and effective on July 1, 2008. The Modification brought your loan current; however it did not include your escrow shortage. I have enclosed a copy of the Modification, which reflects which fees were included.

Wells Fargo also provided the phone number for its Customer Relations Department, which could provide further assistance. Wells Fargo's explanation is responsive because it states that, while the modification agreement resolved Vassalotti's unpaid loan obligations, it failed to address the shortage in her escrow account.

> In Vassalotti's September 23, 2008 letter, she wrote, in pertinent parts:
>
> In short, ASC is charging me illegal monies (in a negative $12,000 escrow account) and misappropriating my mortgage payments.
>
> . . .
>
> ASC is illegally and fraudulently trying to get more money out of me by making up a negative escrow account and then using my mortgage payments to go towards that and not my principal and interest and by increasing my monthly

7

payment for the shortage and charging me late fees when I have sent my agreed upon payment as per my loan mod.

. . .

In the first loan modification I executed in January 2008 (and which ASC breached with no warning or notice to me) the taxes they paid on my behalf were included in the new mortgage amount to be amortized over the life of the new loan. The loan docs clearly state the new mortgage amount and the zero escrow account balance. I had to verify that there were no other outstanding monies or fees owed including and [sic] legal fees from your office's filing of the foreclosure action prior to filing my bankruptcy. Any outstanding monies owed would have to be disclosed in bankruptcy court. There was none. It was all including in the workout for the loan mod. I verified this with both ASC and your office. It was someone in the foreclosure department at your office on or about January 11, 2008. Although ASC breached that contract, the second loan modification again had those fees and outstanding monies included in the new mortgage loan as the principal balance increased. Additionally, I have included copies of ASC's loan modification program guidelines which they sent to me that state they add delinquent taxes and other monies to the new mortgage balance which they did.

. . .

3. ASC is now fraudulently charging me over $12,000 as a negative escrow account and misappropriating the monies from my July and August mortgage payments made in accordance with the 2nd loan modification.

4. ASC's 2nd loan modification which we both executed has a monthly payment of $3019.31 starting July 2008. In August 2008, ASC raised the monthly payment to $4,078.00 to cover the (fraudulent) negative escrow balance. I would never have been approved for a loan at the monthly payment to begin with because I don't qualify for that.

5. ASC is illegally continuing to charge me late fees since my payments have been for the amount stated in the loan mod contract.

6. All outstanding monies owed to ASC were wrapped into the new mortgage amount as noted in the attached documents. There was no negative escrow balance or taxes owed.[4]

On November 12, 2008, Wells Fargo responded to this letter. It wrote:

> Our records indicate that your escrow advance balance was not capitalized in your loan modification to make the modified payment affordable. Your loan modification was completed on July 03, 2008.
>
> An escrow review was processed on July 03, 2008. An Escrow Account Statement was sent to you with our calculations. As a result of this review, effective July 2008, your payment changed from $3,019.31 to $4,078.08.

As in the September 5, 2008 letter, Wells Fargo included a phone number that Vassalotti could use to contact its Customer Relations Department. Wells Fargo's explanation is responsive because it states that, despite Vassalotti's contentions, the loan modification agreement failed to capitalize her escrow deficit. It also explained that, separate from the loan modification agreement, Wells Fargo conducted an escrow review that resulted in an increase of Vassalotti's required escrow payment.

Wells Fargo complied with § 2605(e)(2)(B) by responding to Vassalotti's letters and informing her that, based on its review, the escrow shortage from the original mortgage agreement remained outstanding because Wells Fargo never capitalized her escrow deficit into

---

[4] Vassalotti's September 23, 2008 letter also references other errors, including that Wells Fargo reported to credit bureaus that Vassalotti's mortgage payments were overdue and that Wells Fargo's motions in a related foreclosure action incorrectly named Vassalotti's husband as the respondent. Wells Fargo's November 12, 2008 letter failed to address those errors. Vassalotti never makes allegations, however, related to those errors in the Second Amended Complaint or Third Amended Complaint. Further, it is unclear whether failure to respond to these items can form the basis of a RESPA violation. Section 2605(e)(2)(B)(i) requires the servicer to provide "a statement of the reasons for which the servicer believes the account of the borrower is correct." These two errors are irrelevant as to whether Vassalotti's account was correct.

9

the modified loan balance. See Gruninger v. America's Servicing Co., No. 08-572, 2010 WL 653119, at *4-5 (E.D. Pa. Feb. 22, 2010). Under RESPA, it is irrelevant whether the servicer's understanding of the loan modification agreement is correct, so long as it is reasonable. Section 2605(e)(2)(B) requires only that the loan servicer provide "a statement of the reasons for which the *servicer believes*" (emphasis added) the accounting is correct. A reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous.

Wells Fargo's explanation is reasonable because there is an open question of contract interpretation with respect to whether the May 22, 2008 agreement capitalized the escrow deficit into the modified loan balance. Vassalotti argues that the loan modification resolved all of her obligations under the original mortgage agreement. Wells Fargo responds that the modification resolved her unpaid loan obligations, i.e., the unpaid principal balance and associated interest, but that Vassalotti's escrow obligations are separate from the loan's balance. Wells Fargo also points to the zero dollar (".00") escrow entry to show that Vassalotti's outstanding escrow obligations were never capitalized into the modified balance. If Wells Fargo's interpretation of the contract is incorrect, as Vassalotti contends, that error is properly the subject of a breach of contract claim. See Jones v. Select Portfolio Servicing, Inc., No. 08-972, 2008 WL 1820935, at *9 (E.D. Pa. Apr. 22, 2008) (plaintiff's assertion that the defendant's response was contrary to the terms of the agreement yields an action for breach of contract, not a violation of RESPA). Accordingly, I will grant Defendant's motion to dismiss Count I.[5]

---

[5] Vassalotti also alleges that Wells Fargo violated § 2605(e)(2)(A), which requires a servicer to "make appropriate corrections in the account of the borrower." In particular, the Second Amended Complaint alleges that Wells Fargo admitted in its November 12, 2008 letter that "defendant had inadvertently disregarded LM1 [the January 8, 2008 modification agreement], i.e.

### B. Count IV – Fair Credit Reporting Act

Vassalotti contends that Wells Fargo furnished inaccurate information to Experian, Equifax, and Trans Union. To succeed on a claim under 15 U.S.C. § 1681s-2(b), a plaintiff must prove:

> (1) that [s]he notified a credit reporting agency of the dispute under § 1681i, (2) that the credit reporting agency notified the party who furnished the information under § 1681i(a)(2), and (3) that the party who furnished the information failed to investigate or rectify the disputed charge[].

Taggart v. Norwest Mortg., Inc., No. 09-1281, 2010 WL 114946, at *9 (E.D. Pa. Jan. 11, 2010). Vassalotti clearly alleges each of these elements.[6] Thus, I will deny Defendant's Motion to Dismiss Count IV.

### C. Count V – Unfair Trade Practices and Consumer Protection Law (Pennsylvania law)

Vassalotti fails to state which provision of the UTPCPL Wells Fargo allegedly violated. Like Defendant, I assume that she bases her claim on the catch-all provision, which prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. STAT. ANN. § 201-2(4)(xxi).

---

made an error in not honoring LM1's terms in favor of LM2 [the May 22, 2008 modification agreement]." While Wells Fargo admits that it "inadvertently placed [Vassalotti's] loan modification on hold," it states in the same letter that it remedied the situation when it waived "late fees in the amount of $450.39" and when "Corporate Advance fees in the amount of $2,166.40 were removed from the loan." Vassalotti fails to allege that these corrections were insufficient.

[6] Wells Fargo argues that Vassalotti's claim cannot succeed because the credit reports accurately state that Vassalotti's mortgage was discharged through bankruptcy. The accuracy of the information in the credit report, however, is a question of fact that is better addressed at a later stage in the litigation.

11

A plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct. Hunt v. United States Tobacco Co., 538 F.3d 217, 219 (3d Cir. 2008).[7] Vassalotti claims that Wells Fargo engaged in "deceptive acts that caused confusion and misunderstanding of the terms of the loan modifications." (3AC ¶ 10.) A plaintiff alleging deceptive conduct must satisfy three elements:

> First, a plaintiff must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct. Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss.

Seldon v. Home Loan Serv., Inc., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (internal quotations and citations omitted).[8] A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b). Id. at 469-70.

Vassalotti alleges that Wells Fargo engaged in a pattern of deceptive conduct that caused her to believe that her escrow deficit would be capitalized into the modified loan balance. First, Vassalotti points to Wells Fargo's November 14, 2007 letter stating that the loan modification

---

[7] Although the Pennsylvania Supreme Court has not yet spoken on the issue, courts in this district have held that the 1996 amendment to the catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits plaintiffs to proceed without satisfying all of the elements of common-law fraud. See, e.g., Fingles v. Continental Cas. Co., No. 08-5943, 2010 WL 1718289, at *7 (E.D. Pa. Apr. 28, 2010); Seldon, 647 F. Supp. 2d at 468-71; Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002). I adopt their reasoning.

[8] In contrast, the elements of common law-fraud are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Hunt, 538 F.3d at 225 n.13.

program "adds the delinquent interest, taxes, and/or insurance payments to your unpaid balance if applicable." (3AC Ex. F.) Vassalotti interpreted this letter to mean that her delinquent taxes and insurance payments (i.e., her escrow deficit) would be added to the unpaid balance. Second, Vassalotti points to the loan modification agreement itself. The May 22, 2008 loan modification agreement clearly stated that Vassalotti's required escrow payment would be $327.45. (2AC Ex. N.) In July 2008, less than two months after Vassalotti executed the loan modification agreement, Wells Fargo increased Vassalotti's required monthly escrow payments from $327.45 to $1,214. (2AC Ex. P.)

Vassalotti alleges that Wells Fargo's deceptive acts caused her to believe that, if she executed the loan modification agreement, her escrow deficit would be capitalized into the modified balance and that her required monthly escrow payments would be only $327.45. Relying on these statements, she chose to execute the loan modification agreement. Vassalotti claims that she suffered losses when Wells Fargo increased her required monthly payments, exposed her to late fees, and attempted to foreclose on her property. These allegations are sufficient to bring a claim for deceptive conduct under the catch-all provision of the UTPCPL. Thus, I will deny Wells Fargo's Motion to Dismiss Count V.

**III. CONCLUSION**

For the reasons discussed above, I will grant Defendant's Motion to Dismiss Count I. I will deny Defendant's Motion to Dismiss Counts IV and V.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to: Copies **MAILED** on _____ to: